IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JAMES T. HUDDLESTON | § | |
| | § | |
| V. | § | CIVIL ACTION NO. SA-17-CV-1228-XR |
| | § | |
| CHUCKS TRANSPORT INCORPORATED | § | |
| AND EMERSON C. NELSON | § | |

---

**DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND BRIEF IN SUPPORT [DKT. NO. 27]**

---

TO THE HONORABLE JUDGE OF SAID COURT:

Defendants, Chucks Transport Incorporated ("Chucks") and Emerson C. Nelson (collectively, "Defendants"), file this Response to *Plaintiff's Motion for Summary Judgment and Brief in Support [Dkt. No. 27]* ("Plaintiff's MSJ"), and respectfully show unto the Court as follows:

## I.   SUMMARY

1.      During Plaintiff's employment with Chucks, Plaintiff was exempt from the overtime pay requirements set forth in the Fair Labor Standards Act ("FLSA"). In the five years Plaintiff was Chucks' employee, he never once questioned his exempt status, never made a demand for overtime pay, and then, almost a year after his resignation, filed this lawsuit seeking three years-worth of overtime pay and statutory liquidated damages.

2.      In support of his overtime wage claim, Plaintiff has provided testimonial evidence in the form of his Declaration, which is consistently refuted by the evidence produced in this case, including the very documents upon which Plaintiff relies. Moreover, the summary judgment evidence proffered by Plaintiff himself and Defendants establishes the existence of genuine disputes of material fact on at least two essential elements of Plaintiff's FLSA claim. Because Plaintiff has not met his summary judgment burden and established his right to recovery as a matter

of law, summary judgment is improper.

## II.   BACKGROUND

3.     Chucks provides freight brokerage services to third parties needing to transport foodstuffs locally and nationally.  Exh. 1 at ¶ 2.  In July 2012, Plaintiff joined Chucks' employ, as both a dispatch and sales employee.  Exh. 1 at ¶ 3; Exh. 6 at 19:22-20:2; Exh. C. to Plaintiff's MSJ ("Plaintiff's Declaration") at ¶ 4.

4.     Having no experience in the transport industry, Plaintiff was initially hired as a sales/dispatch employee that brokered trucking services to customers that needed food or other items transported.  Exh. 1 at ¶ 2.  As compensation, Plaintiff was paid a base salary and earned commission based on a percentage of the profit he generated from carrier rate negotiations.  Exh. 1 at ¶ 3; Plaintiff's Declaration at ¶ 7.  In 2014, Plaintiff assumed a supervisory/management position, wherein he was responsible for employee training, policy implementation, as well as overseeing the night dispatch team and providing management consultation to Chucks' President, Mary Brandt, and Chucks' sole owner, Chief Executive Officer, and Defendant herein, Emerson C. Nelson.  Exh. 1 at ¶¶ 4-7; Exh. 3; Exhs. 8-13.  Plaintiff's management responsibilities grew over time as a result of Nelson's intention to offer him future ownership of the company.  Exh. 2 at 67:23-68:6; Exh. 1 at ¶ 8.

5.     Despite the pay and responsibility increases and the potential for ownership, Plaintiff routinely abused Defendants' trust by engaging in non-work related activity during work hours.  Exh. 1 ¶ 9; Exhs. 4- 5; Exh. 14.  Eventually, Plaintiff's behavior caught up with him and caused Nelson to tighten company policy.  Exh. 14; Exh. 16.  On January 6, 2017, Plaintiff resigned.  Exh. 15.

6.      Almost a year later, on December 4, 2017, Plaintiff initiated this lawsuit, seeking unpaid overtime wages under the FLSA from December 4, 2014 through January 7, 2017.  *See* Plaintiffs' Original Complaint [Dkt. No. 1].  Despite testifying under oath that he does not know when he started to work more than 40 hours per week,[1] Plaintiff alleges in his Original Complaint his regular rate while employed with Chucks was approximately $64.00 per hour and his overtime wage was therefore $96.00 per hour.  Dkt. No. 1 at ¶ 22.  He claimed to have worked an average of 63 hours per week, 23 of which constituted overtime, and was therefore entitled to be paid approximately $116,000 per year for overtime, or $350,000 for the last three (3) years.  *Id.* at ¶¶ 21-22.

7.      Plaintiff has now moved for summary judgment on his FLSA claim.  *See generally,* Plaintiff's MSJ.  Therein, Plaintiff has alleged he worked in excess of 59.75 hours per week in the office, typically between 6:30 a.m. and 6:00 p.m. Monday through Friday and 4.5 hours every other weekend, and an additional 15 hours a week outside of his in-office hours, for a total of 19.75 hours overtime.  Plaintiff's MSJ at ¶ 7.  He further claims his overtime wage rate in 2014, 2015, 2016, and 2017 was $59.00 per hour, $68.23 per hour, $96.20 per hour, and at least $96.20 per hour, respectively.  Plaintiff's MSJ at ¶¶ 15-17.  Based on these figures, Plaintiff has requested that the Court award him $307,390.93 in unpaid overtime wages and an additional amount for statutory liquidated damages.  *See* Plaintiff's MSJ at ¶¶ 65-67.

### III.      OBJECTIONS TO PLAINTIFF'S MSJ AND PLAINTIFF'S EVIDENCE OFFERED IN SUPPORT THEREOF

8.      Defendants object to Plaintiff's MSJ because it does not comply with and exceeds the page limitation set forth in Local Court Rule CV-7(d)(3).  Defendants request that the Court strike all pages that exceed the maximum pages Local Court Rule CV-7(d)(3) permits or

---

1 *See* Exh. 6 at 26:4-6.

alternatively, order Plaintiff to re-file Plaintiff's MSJ in compliance with Local Court Rule CV-7(d)(3).

9.      Defendants object to Exhibits A and D of Plaintiff's MSJ because they are unverified and thus, do not constitute competent summary judgment evidence.  *See Dorsett v. Bd. of Trustees for State Colleges & Universities*, 940 F.2d 121, 124 (5th Cir. 1991) (unsworn pleadings are not competent summary judgment evidence).  Defendants object to paragraph 13 in Exhibit C of Plaintiff's MSJ because it contains factual conclusions, opinions, or subjective beliefs unsupported by any evidence.  *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994). (unsubstantiated assertions are not competent summary judgment evidence).  Defendants object to Exhibits C-2 and G to Plaintiff's MSJ because they constitute inadmissible hearsay.  FED. R. EVID. 802.  Based on the foregoing, Defendants request that the Court strike the aforementioned evidence from Plaintiff's MSJ along with any facts Plaintiff relies upon therein that are supported by Exhibits A and D, paragraph 13 of Exhibit C, Exhibit C-2, and Exhibit G of Plaintiff's MSJ.

## IV.   SUMMARY JUDGMENT EVIDENCE

10.      Defendants intend to use the following evidence as summary judgment proof:

<u>Exhibit 1:</u>      Declaration of Mary Brandt

<u>Exhibit 2:</u>      Excerpts from Deposition of Emerson C. Nelson

<u>Exhibit 3:</u>      Policies and procedures Plaintiff prepared for certain customer accounts:
- CHUCKS 000457-458
- CHUCKS 000484-485
- CHUCKS 000490-491
- CHUCKS 000492-493
- CHUCKS 000494-495
- CHUCKS 000496-497
*Filed under seal*

Exhibit 4:    Samples of Huddleston's non-work related emails during work hours:
- CHUCKS 000764-769
- CHUCKS 000791-802
- CHUCKS 000685-687
- CHUCKS 000437-438
- CHUCKS 000700
- CHUCKS 000384-385
- CHUCKS 000699
- CHUCKS 000636
- CHUCKS 000637
- CHUCKS 000634-635
- CHUCKS 000633
- CHUCKS 000618-619

Exhibit 5:    Portions of  conversation logs from Chucks' internal chat system:
- CHUCKS 04954-4955
- CHUCKS 05239-5244
- CHUCKS 001114-1116
- CHUCKS 06071-6073
- CHUCKS 001099-1110
- CHUCKS 001047

*Filed under seal*

Exhibit 6:    Excerpts from Deposition of James T. Huddleston

Exhibit 7:    Huddleston Deposition Exhibit 22 – T2000 Logs (CHUCKS 002218-2231)

Exhibit 8:    Huddleston Deposition Exhibit 23 – Hausman to do list (CHUCKS 000486-487); *Filed under seal*

Exhibit 9:    Huddleston Deposition Exhibit 24 – Holmes contact list (CHUCKS 000488-489); *Filed under seal*

Exhibit 10:   Huddleston Deposition Exhibit 25 – "LUMPER AT NIGHT J-B" Email (CHUCKS 000498); *Filed under seal*

Exhibit 11:   Huddleston Deposition Exhibit 26 – "point of contact at night for Hausman Foods" Email (CHUCKS 000500)

Exhibit 12:   Huddleston Deposition Exhibit 27 –  "night time j-b problems" Email (CHUCKS 002519); *Filed under seal*

Exhibit 13:   Huddleston Deposition Exhibit 33 – "WEEKLY MANDATORY TEACHING MEETINGS" Email (CHUCKS 000477)

Exhibit 14:    Huddleston Deposition Exhibit 35 – Huddleston's chat log with Mary Brandt (CHUCKS 05120-5125), *Filed under seal*

Exhibit 15:    Huddleston Deposition Exhibit 36 – Resignation Letter

Exhibit 16:    "Promotions" Email, HUDDLESTON (FEDERAL) 000002-3

## V.    ARGUMENT & AUTHORITIES

11.    To be entitled to summary judgment on a claim, a plaintiff must show there are no genuine disputes of material fact and must establish each element of his claim as a matter of law. *Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1194 (5th Cir. 1986). The Court shall only grant summary judgment for the movant if he shows no genuine dispute as to any material fact and that he is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56.

12.    A genuine dispute is one that can be determined only by a trier of fact because it may be resolved in favor of either party. *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 255 (1986); *Perales v. Am. Ret. Corp.*, CIV.A. SA-04-CA-0928, 2005 WL 2367772, at *2 (W.D. Tex. Sept. 26, 2005). A material fact is one that can affect the outcome of the suit under the governing substantive law. *Anderson,* 477 U.S. at 248. The substantive law determines which facts are material. *Id.*

13.    A nonmoving party can defeat summary judgment by producing admissible evidence in the record that "demonstrates it can satisfy a "fair-minded jury" that it is entitled to a verdict in its favor." *ContiCommodity Services, Inc. v. Ragan*, 63 F.3d 438, 441 (5th Cir. 1995). All inferences must be drawn in favor of the party opposing the motion. *Dorsett*, 940 F.2d at 123.

### A.    Plaintiff has not met his burden.

14.    Under the FLSA, an employer cannot employ any employee for a workweek longer than forty hours unless the employee receives compensation at the rate of one-half times the employee's regular rate for the work the employee performed in excess of forty hours per week.

29 U.S.C. § 207(a)(1).  An employee who brings suit for unpaid overtime compensation bears the burden of proving by a preponderance of the evidence: (1) an employer-employee relationship existed during the unpaid overtime periods claimed; (2) the employee engaged in activities covered under the FLSA; (3) the employer violated the FLSA's overtime wage requirements; and (4) the amount of overtime compensation due.  *Johnson v. Heckmann Water Res. (CVR), Inc.*, 758 F.3d 627, 630 (5th Cir. 2014).  Plaintiff has failed to carry his burden on elements three and four.

> ### *1)     Plaintiff was an exempt employee; thus, a genuine dispute exists as to element 3.*

15.     Plaintiff cannot undisputedly prove that Defendants violated the FLSA's overtime provisions because a genuine fact dispute exists as to Plaintiff's exempt status.[2]  Employees working in a bona fide executive, administrative or professional capacity, the requirements of which are defined and delimited in the Code of Federal Regulations, are excluded from the FLSA's overtime provisions.  *See* 29 U.S.C. § 213(a)(1); *Lott v. Howard Wilson Chrysler-Plymouth, Inc.*, 203 F.3d 326, 331 (5th Cir. 2000).

16.     To qualify for the "administrative exemption," an employer must prove the employee: (1) received compensation on a salary basis above a certain threshold, (2) primarily performed office or non-manual work directly related to the management, his employer's general business operations, or his employer's customers; and (3) primarily exercised discretion and independent judgment with respect to matters of significance.  29 C.F.R. § 541.200.

---

[2] Throughout the pendency of this lawsuit, Defendants have repeatedly insisted and maintained Plaintiff's exempt status as a defense to his FLSA claims.  Defendants have already sought leave to formally conform their Answer to include the exemption defense.  *See* Defendants' Motion for Leave to File First Amended Answer [Dkt. No. 32]. And, " 'Where the [affirmative defense] is raised in the trial court in a manner that does not result in unfair surprise ... technical failure to comply precisely with Rule 8(c) (requiring that affirmative defenses be pled) is not fatal.' " *Yaklin v. W-H Energy Services, Inc.*, CIV.A. C-07-422, 2008 WL 4692419, at *2 (S.D. Tex. Oct. 22, 2008).

17.     Work directly related to management includes, among other things, work in functional areas such as personnel management.  29 C.F.R. § 541.201.  Factors considered in determining whether an employee exercises discretion and independent judgment while performing administrative work includes, among others factors: possessing the authority to formulate, affect, interpret or implement management policies or operating practices, carrying out major assignments related to business operations, possessing authority to deviate from established policies and procedures without prior approval, providing consultation or expert advice to management, participating in planning long- or short-term business objectives, and investigating and resolving matters of significance on behalf of management.  29 C.F.R. § 541.202.

18.     To qualify for the "executive exemption," an employer must also compensate the employee above a certain salary threshold and must prove that the employee: (1) primarily managed the enterprise in which he was employed or a customarily recognized department or subdivision thereof; (2) routinely directed the work of two or more other employees; and (3) possessed hiring and firing authority, or made recommendations as to hiring, firing, promotion, and advancement which were considered by his superiors.  29 C.F.R. § 541.100.  "Management" generally includes, but is not limited to, interviewing, selecting, and training of employees; directing the work of employees; planning work; and determining techniques to be used in the workplace.  29 C.F.R. § 541.102.  Plaintiff fits squarely within this definition.

19.     Pursuant to 29 C.F.R. § 541.708, an employee who doesn't perform each and every primary duty outlined in either 29 C.F.R. §§ 541.100 and 541.200 can still qualify as exempt if he performs a combination of the exempt duties described in those Regulations.  *King v. Stevenson Beer Distrib. Co.*, 11 F. Supp. 3d 772, 786 (S.D. Tex. 2014).  The "combination exemption" is meant to addresses situations when an employee's job duties do not meet the primary requirement

of any particular exemption and acts as "a mechanism for cobbling together different exempt duties for purposes of meeting the primary-duty test." *Id.* (quoting *Intracomm, Inc. v. Bajaj,* 492 F.3d 285, 294 (4th Cir. 2007)).

20.     Whether an employee is exempt from the overtime provisions of the FLSA is mainly a question of fact determined by the employee's salary, duties, and application of the factors outlined in 29 C.F.R. § 541.001 *et. seq.*, but the ultimate decision is a question of law. *King*, 11 F. Supp. 3d at 780; *Lott*, 203 F.3d at 330.

21.     Plaintiff does not dispute he met the threshold salary requirements, but only that he did not perform the type of work required to classify him as exempt.  Despite his executive and management duties, he seeks to portray himself as a mere salesman.  Viewing the evidence in the light most favorable to Defendants, it is clear that a genuine dispute of material fact as to Plaintiff's exempt status exists.

a)     <u>Plaintiff primarily performed both administrative and executive functions</u>.

22.     During Plaintiff's employment with Chucks, Plaintiff primarily performed a blend of both administrative and executive work.  For example, in addition to Plaintiff's sales duties, Plaintiff, without supervision and through the exercise of discretion and independent judgment:

- Managed fuel advance requests for all carriers (Exh. 6 at 94:23-95:10);

- Implemented broad policies and procedures for freight brokering and distributed to Chucks' dispatch team without seeking prior review or approval (Exh. 1 at ¶ 5; Exh. 3; Exh 6. at 74:1-75:13, 85:14-86:20; Exhs. 8-9);

- Spear-headed weekly mandatory training meetings (Exh. 1 at ¶ 7; Exh. 13); and

- Independently managed the night dispatch crew, which consisted of two or more people (Exh. 1 at ¶ 6; Exhs. 10-12);

- Provided training and educational materials to night dispatch team (Exh. 1 at ¶ 6; Exhs. 10-12);

- Formulated policies and procedures related to nighttime lumper fees and shortages, and keeping the team informed of changes in customer contact information (Exh. 1 at ¶ 6; Exhs. 10-12);

- Independently addressed and instructed night dispatchers on problems that arose at night and served as the first line of resolution (Exhs. 10-12; Exh. 6 at 76:17-77:23, 78:13-19, 78:20-82:3).

In attempting to negate the application of the exemption, Plaintiff altogether ignores the work he actually performed that properly classified him as an employee exempt from the FLSA's overtime provisions.[3]  *See* 29 C.F.R. § 541.200 (exempt administrative work must relate to management and include exercise of discretion and independent judgment); 29 C.F.R. § 541.201 (for administrative exemption, "management" work includes personnel management; exercise of discretion and independent judgment includes formulating and implementing management policies and operating practices, authority to deviate from established procedures without approval, provide consultation to superiors, and investigate and resolve matters on behalf of management); 29 C.F.R. § 541.100 (exempt executive work must involve primarily management of enterprise, regular direction over work of two or more employees); and 29 C.F.R. § 541.102 ("management" includes training and directing work of employees, planning work and determining workplace techniques).  The administrative exemption or a combination of the administrative and executive exemption applies to Plaintiff's overtime wage claim and precludes any recovery under the FLSA.  Moreover, although Plaintiff regularly performed "inside sales representative" tasks, the frequency in which he engaged in exempt versus nonexempt work is immaterial.  *See Dalheim v. KDFW-TV*, 918 F.2d 1220, 1227 (5th Cir. 1990) (court should not

---

[3] Plaintiff claims that he was a mere inside sales person.  *See* Plaintiff's MSJ at ¶ 1.

ascertain "primary duty" by simply contrasting the amount of time each day an employee spends on exempt and nonexempt work; court should instead focus on work performed that is of principal value to employer).

23.     Defendants properly classified Plaintiff as an exempt employee and were not required to pay him overtime wages during his employment.  Consequently, Plaintiff cannot establish that Defendants violated the FLSA, which negates the third element of his FLSA claim. Summary judgment is therefore improper.

b)     No deductions from Plaintiff's salary occurred.

24.     The fact that Chucks deducted losses from Plaintiff's compensation one time does not destroy Plaintiff's exempt status because the deduction did not come from Plaintiff's salary. It instead came from his commissions.  Exh. 1 at ¶ 3.

25.     Under 29 C.F.R. § 541.602, an employee is paid on a "salary basis" "if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which is not subject to reduction because of variations in the quality or quantity of work performed."  An employer who deducts from salary shall lose the exemption.  29 C.F.R. § 541.603.  Because Defendants never deducted pay from Plaintiff's salary, Defendants do not lose the exemption.

26.     In Plaintiff's Declaration and in his deposition, he testified that his compensation with Chucks consisted of a base salary plus commissions earned from profits generated on freight brokering negotiations, or "booking loads."  *See* Plaintiff's Declaration at ¶ 7; Exh. 6 at 24:23-25:8.  The Policy attached to Plaintiff's MSJ as Exhibit I ("Policy") provides a list of procedures that Chucks' employees had to follow when booking loads. The Policy states that failure to comply with the procedures therein will result in commission forfeiture and "[i]f you lose money on the

files, [it] will be deducted from your pay." Exhibit I to Plaintiff's MSJ.

27.     The existing evidence establishes that the one deduction taken from Plaintiff's "pay" came from his commissions, and not Plaintiff's salary. Exh. 1 at ¶ 3. Commissions, by their very nature, are variable, and could not reasonably make up any part of the predetermined amount Plaintiff received each pay period. By law, only an employer that deducts from an employee's **_salary_** loses the exemption. *See* 29 C.F.R. § 541.603. Accordingly, Defendants have not violated 29 C.F.R. § 541.602, and therefore do not lose their right to claim an exemption.

### 2)     *The amount of overtime pay due, if any, is disputed, negating element 4.*

28.     Should the Court find that Plaintiff's job duties while employed with Chucks fail to satisfy the exempt qualifications, Plaintiff's FLSA claim still fails because genuine disputes of material fact exist as to the amount of overtime Plaintiff worked. In a situation like this, where the employer did not keep time records, a plaintiff can satisfy his burden of proof on the amount of overtime worked by proving that he in fact performed work for which he was improperly compensated and producing sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687–88, 66 S. Ct. 1187, 1192, 90 L. Ed. 1515 (1946). The employer must then come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence to defeat summary judgment. *Id.*

29.     The only evidence Plaintiff has to support the amount of overtime he worked, if any, is his own testimony. The physical evidence, including the evidence Plaintiff advised he relied upon to formulate the workhours he testifies to, contradict his statements and negates summary judgment.

a)      Start, Stop, and After-Hours time

30.     Despite the fact that Plaintiff testified in his deposition that he did not know when he began to work for Chucks in excess of 40 hours and that he has no written time records to substantiate the hours he worked during his employment, Plaintiff has testified that he typically worked in the office from about 6:30 a.m. to 6:00 p.m. Monday through Friday and about 4.5 hours every other Saturday (59.75 hours per week).  *See* Exh. 6 at 26:4-6 and 27:21-28:10; Plaintiff's Declaration at ¶ 9.  When asked how he came up with the calculation, Plaintiff testified that he relied upon the T2000 logs,[4] his cell phone records[5] produced in this case, the expert report Collin Miller prepared, and the Carrier Status Report produced by Defendants.  Exh. 6 at 49:7-25, 27:17-29:19, and 147:21-148:8.  The evidence Plaintiff relies upon to support his calculation of hours, however, consistently refutes his own testimony, creating genuine disputes of material fact.

31.     As already stated, Plaintiff claims he routinely began his weekday workday at 6:30 a.m.  *See* Exh. 6 at 27:21-24; Plaintiff's Declaration at ¶ 9; Plaintiff's MSJ at ¶ 7; Dkt. No. 1 at ¶ 21.  Nelson, however, testified that he did not see Plaintiff in the office before 7:30 a.m. on a regular basis.  Exh. 2 at 43:24-44:10 and 49:22-25.  Unlike Plaintiff's testimony, Nelson's is corroborated.

32.     The T2000 logs, which Plaintiff testified he relies upon to prove his overtime claim, show the times Plaintiff logged into Chucks' computer system to begin his workday.  Exh. 7; Exh. 6 at 49:8-25.  When reviewed in detail, the T2000 logs undisputedly show that, from at least October 8, 2015 to January 5, 2017 (about one-half the time period for which Plaintiff seeks overtime pay), Plaintiff routinely began work around **7:30 a.m.**  Exh. 7.  In fact, Plaintiff's average

---

[4] During his deposition, Plaintiff testified under oath that he could not identify the T2000 log and didn't know what the T2000 log was.  *See* Exh. 6 at 49:7-50:9.
[5] Concerning the phone records upon which he relies, Plaintiff testified under oath that he cannot identify a single work related number on the records.  *See* Exh. 6 at 47:23 –48:12.

login time during that timeframe is 7:26 a.m.  Exh. 7.  These logs also show that out of 351 logins, Plaintiff logged in before 7:00 a.m. only 25 times, or about **7%** of the time,  and logged in before 6:30 a.m. or within 10 minutes after 6:30 a.m. only 11 times, or about **3%** of the time.  Exh. 7. The evidence Plaintiff contends supports his FLSA claim directly contradicts the statements in Plaintiff's own deposition and Declaration. *See* Exh. 6 at 49:8-25; Exh. 7; *compare* Plaintiff's Declaration at ¶ 9.  Instead, it supports Nelson's testimony.  Exh. 7*;* Exh. 2 at 43:24-44:10, 49: 22-25.

33.     When asked about the cell phone records he relies upon, Plaintiff admits that he has not reviewed the cell phone records, that instead, his counsel did, and that when his counsel received them, Plaintiff could only recall Chucks' office work number.[6]  Exh. 6 at 42:9-44:17 and 45:9-17.  Plaintiff also testified that he used his cell phone for personal use, did not know which numbers on the cell phone records were work related, and could not identify which ones were made or received after hours.  Exh. 6 at 147:18-20 and 44:21-45:20.  Plaintiff also agreed that the cell phone records do not indicate the substance of the phone calls or text messages made.  Exh. 6 at 147:18-20 and 44:21-45:20.

34.     Plaintiff also testified that he relies upon Collin Miller's expert report to support his overtime wage claim.  Exh. 6 at 27:21-29:19; Plaintiff's Declaration at ¶ 14.  Excerpts of Mr. Miller's report are attached to Plaintiff's MSJ as Exhibit G.  Plaintiff's assertion that the graph his expert created, which purportedly represents the emails Plaintiff sent during his employment, and which Plaintiff alleges is consistent with his 6:30 a.m. to 6:30 p.m. testimony is, like the rest of his assertions, inaccurate.

---

[6] According to Plaintiff, these cell phone records are for the only phone Plaintiff used while employed with Chucks outside of his in-office phone. Exh. 6 at 42:2-8.

35.     First, Mr. Miller's opinions and the graph he developed include an analysis of emails sent prior to December 4, 2014.[7]  According to the relief sought in Plaintiff's Original Complaint, Plaintiff's MSJ, and the largest applicable limitations period, Plaintiff is only seeking and could only recover (if the Court finds willful violations of the FLSA) overtime pay due for the three years immediately preceding the commencement of this lawsuit.  *See* Dkt. No. 1 at ¶¶ 22-23 and Plaintiff's MSJ at ¶¶ 62-65; 29 U.S.C. § 255(a).  The figures depicted in the graph represent and include data that is irrelevant, and therefore skews the data.

36.     A quick glance at the same graph shows that Plaintiff only sent a little over 1000 emails prior to 7:30 a.m. on weekdays and a little over 1000 emails after 5:00 p.m. during the entire five year period Plaintiff was employed with Chucks and represented on the graph:



 Exhibit G to Plaintiff's MSJ.  For the largest recoverable time frame, these numbers are actually even less, since the graph includes data from January 1, 2012 through December 3, 2014.  *Id.*  Additionally, as Plaintiff admitted in his deposition he made no determination as to the number of emails that were auto-generated, which  he agrees were regularly sent from his work email account.  *See* Exh. 6 at 27:21-32:22.  Moreover, Mr. Miller's report wholly lacks any discussion regarding the auto-generated emails Plaintiff testifies were routinely sent from his work email account or

---

[7] Plaintiff commenced this lawsuit on December 4, 2017, so effectively, he could, at most, only recover overtime from December 4, 2014 through December 4, 2017.  *See*  29 U.S.C. § 255(a).  In Plaintiff's Complaint and Plaintiff's MSJ, he only seeks overtime pay for this time period.  *See* Dkt. No. 1 at ¶¶ 22-23 and Plaintiff's MSJ at ¶¶ 62-65.

whether he considered them in his analysis.  *See* Exhibit G to Plaintiff's MSJ.

37.     What the graph actually shows is that a majority of the emails Plaintiff sent or received during his employment were sent between the hours of 7:30 a.m. and 5:00 p.m. during the week, as Nelson testified.  *Id;* Exh. 2 at 43:24-44:10 and 49:22-25.   Again, the evidence Plaintiff relies upon to support his claims contradicts his testimony but remains consistent with Nelson's—typically, Plaintiff began his workday during the week around 7:30 a.m., ended his workday at 5:00 p.m. and worked about a half-day every other weekend.

38.     Moreover, Mr. Miller's report contains no indication that he reviewed the underlying substance of each email or determined if they were actually prepared by Plaintiff.  *See* Exhibit G to Plaintiff's MSJ.  Plaintiff also has not reviewed the underlying substance of each email included in his expert's analysis.  Exh. 6 at 29:10-30:13.  Plaintiff and his expert simply skip this portion of the analysis.  Additionally, Mr. Miller's report is also devoid of any actual opinion on the actual number of emails sent in any given timeframe and the amount of overtime worked, if any.  *See* Exhibit G to Plaintiff's MSJ.  At best, the hearsay expert report Plaintiff relies upon to support his overtime hours only shows that the email account associated with "travis@chuckstransport.com" sent emails from 2012 to 2017.

39.     The last document Plaintiff relies upon to corroborate his testimony about the overtime hours he worked is the Carrier Status Report the Defendants produced.  Exh. 6 at 147:21-148:21; Plaintiff's Declaration at ¶¶ 15-16.  As part of his Declaration, Plaintiff attached a graph he created, which is hearsay, using the information obtained from the Carrier Status Report native file, which Plaintiff contends summarizes the time and date for each of his entries in the Transporter 2000 program ("T2000") that generated the Carrier Status Report.  This graph was not produced during discovery and appears to have been created solely for purposes of Plaintiff's MSJ.

40.     Like Mr. Miller's, Plaintiff has included in his analysis Carrier Status Report entries for the timeframe predating the period in which he seeks overtime pay.  *See* Exhibit C-2 to Plaintiff's Declaration.  Inclusion of these entries likewise skews the data.  For purposes of Plaintiff's claim, the only values that matter are those depicted in the box below, which only includes data entered around December 4, 2014 through the date Plaintiff resigned:



*See* Exhibit C-2 to Plaintiff's Declaration.  Consistent with the T2000 logins and Nelson's testimony, the graph Plaintiff created and relies upon to support the amount of overtime hours he worked ***does not*** establish that Plaintiff typically worked from 6:30 a.m. to 6:30 p.m., and at the least, shows Plaintiff routinely began his workdays around 7:30 a.m.  Exh. 7 and 2 at 43:24-44:10 and 49:22-25.

      b)   <u>During Working Hours</u>

41.     In Plaintiff's MSJ, Plaintiff conveniently leaves out and fails to consider in his hours calculation the fact that he frequently engaged in non-work related activity while in the office during work hours.  In his deposition, Plaintiff admitted to using his work computer for non-work related activities, and would transmit pornographic emails, and flirt with, send photos to, and initiate or participate in inappropriate conversations with customer representatives and colleagues

using the email address Chucks assigned to him as well as Chucks' internal chat system.  Exhss 4-5; Exh. 6 at 143:14-22; Exh. 14.  Plaintiff also admits to pranking his co-workers during in-office work hours instead of performing actual work  Exh. 6 at 116:21-24; Exh. 14.  Based on this evidence, Plaintiff's assertion that he "typically worked from the office from about 6:30 a.m. to 6:00 p.m. Monday through Friday" is inaccurate.

42.     In this action, Plaintiff insists that the Court require Defendants to pay him for all of the "work" he performed, even though a portion of the "work" he performed during regular work hours in fact did not qualify as compensable work.  "Work" entails "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." *Bridges v. Empire Scaffold, L.L.C., 875 F.3d 222, 225* (5th Cir. 2017), cert. denied sub nom. *Bridges v. Empire Scaffold, LLC,* 138 S. Ct. 1552, 200 L. Ed. 2d 742 (2018) (citing *Tenn. Coal, Iron & R. Co. v. Muscoda Local No.* 123, 321 U.S. 590, 598, 64 S.Ct. 698, 88 L.Ed. 949 (1944)).  Plaintiff cannot reasonably argue that his engagement and participation in nonproductive and non-work related activity was "controlled or required" by Chucks and "pursued necessarily and primarily for the benefit of Chucks and its operations.

43.     The actual evidence that exists, including the evidence Plaintiff relies upon to formulate and support his testimonial evidence of overtime worked, repeatedly controverts Plaintiff's testimony.  Summary judgment in Plaintiff's favor should be denied.

## B.     Fact disputes preclude Nelson from joint and several liability and preclude Plaintiff from recovering liquidated damages.

44.     Plaintiff's failure to meet his burden on at least two essential elements of his claim absolves Nelson of joint and several liability under the FLSA for summary judgment purposes.  Likewise, Plaintiff is also ineligible to recover the statutory liquidated damages he seeks.  29

U.S.C. § 216(b) (liquidated damages only awarded if employer violates FLSA).  Even if this Court entered summary judgment in Plaintiff's favor, the arguments articulated in section V(A) of this Response and the evidence supplied in support thereof demonstrate that Defendants had reasonable grounds to classify Plaintiff as an exempt employee, and that any act or omission committed in violation of the FLSA, if any, was done in good faith.  Under 29 U.S.C. § 260, this Court may and should excuse Defendants from paying Plaintiff statutory liquidated damages.  *See* 29 U.S.C. § 260 (liquidated damages not required if employer commits good faith violations of FLSA).

**C.      Plaintiff has failed to prove Defendants willfully violated the FLSA.**

45.      Under federal law, if an employer willfully violates the overtime provisions of the FLSA, a three-year statute of limitations applies instead of a two-year limitations period.  29 U.S.C. § 255(a).  A violation of the FLSA is "willful" if the employer "knew or showed reckless disregard for…whether its conduct was prohibited by statute."  *Singer v. City of Waco, Tex.* 324 F.3d 813, 821(5th Cir. 2003).  Plaintiff has not shown, as a matter of law, that Defendants violated the FLSA, much less willfully.

46.      Plaintiff alleges that Defendants' reliance on a blanket policy proves Defendants willfully violated the FLSA's overtime provisions, relying upon this Court's opinion in *Clark v. Centene Co. of Texas, L.P.*, 104 F. Supp. 3d 813 (W.D. Tex. 2015).  Plaintiff, however, fails to address the second element of the "blanket policy" evidence this Court acknowledged in that case.  Reliance on a blanket policy, according to the case reviewed by this Court, is only proof of willfulness if the defendant ***also fails to review or study whether any exemption applied***.  *Clark,* 104 F.Supp.3d at 825 (citing *Morgan v. Family Dollar Stores, Inc.* 551 F.3d 1233, 1280-81 (11th Cir. 2008)) (emphasis added).

47.      In his deposition, Nelson testified that Chucks' human resources employee looked into the exemption issue and that Chucks consulted legal counsel about the proper pay classification for employees in Plaintiff's position.  Exh. 2 at 58:19-59:6, 60:6-61:5.  Chucks' reliance on a blanket policy, if any, does not constitute evidence of willfulness under the standard Plaintiff articulates and relies upon because Defendants researched and sought review of their overtime pay policy.  *Clark,* 104 F.Supp.3d at 825.  The limitations period only extends when willful FLSA violations occur, and Plaintiff has not conclusively established willfulness in this case.  Defendants' liability, if any, then, should be limited to the two-year time period immediately preceding the date Plaintiff commenced this lawsuit.

48.      Plaintiff has failed to carry his burden on at least two essential elements of his FLSA claim.  Plaintiff's request for summary judgment must be denied.

### PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendants request that this Court deny Plaintiff's Motion for Summary Judgment, and award Defendants all other relief this Court deems just and proper.

Respectfully submitted,

**PULMAN, CAPPUCCIO & PULLEN, LLP**
2161 NW Military Hwy, Suite 400
San Antonio, Texas 78213
(210) 222-9494 Telephone
(210) 892-1610 Facsimile

By: */s/ Eric A. Pullen*
    Eric A. Pullen
    Texas State Bar No. 24007881
    epullen@pulmanlaw.com
    Sydnee R. Garcia
    Texas State Bar No. 24092400
    sgarcia@pulmanlaw.com

*Attorneys for Defendants*

{00381994 5}                                          20

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the **20ᵗʰ** day of **September, 2018**, the above and foregoing *Defendants' Response to Plaintiff's Motion for Summary Judgment and Brief in Support* has been transmitted by CM/ECF, which will give notice to those identified below, and was also served by email to the following:

***Via E-mail to: sschueler@winstead.com; jratley@winstead.com; bwilkin@winstead.com***
Stephen W. Schueler
Bruce R. Wilkin
Justin K. Ratley
600 Travis St., Suite 5200
Houston, Texas 77002

WINSTEAD PC
600 Travis St., Suite 5200
Houston, Texas 77002
*(Of Counsel)*

**ATTORNEYS FOR PLAINTIFF**

                                    */s/ Eric A. Pullen*
                                    Eric A. Pullen