UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS

**FILED**

JAN 0 9 2019

CLERK, U.S. DISTRICT CLERK
WESTERN DISTRICT OF TEXAS
BY_____
     DEPUTY

| | |
|---|---|
| JAMES T. HUDDLESTON,      ) | |
|                ) | |
|   **Plaintiff,**      ) | |
|                ) | |
|   **v.**         ) | **Civil Case No. 5:17-1228** |
|                ) | |
| **CHUCKS TRANSPORT**    ) | |
| **INCORPORATED et al.,**    ) | |
|                ) | |
|   **Defendants.**     ) | |

## MEMORANDUM OPINION

The FLSA promises employees time-and-a-half pay for weekly work exceeding forty hours. 29 U.S.C. § 207(a)(1). James Huddleston says he routinely worked fifty-hour weeks—and maybe even seventy-five-hour weeks—as an inside salesman for trucking company Chucks Transport. But he claims Chucks never paid him overtime. So he sued Chucks for backpay and liquidated damages.

Huddleston now moves for summary judgment. Chucks opposes the motion, arguing Huddleston falls within the FLSA's exemption for administrative or executive employees. And Chucks files two other motions to thwart summary judgment: a motion to amend its answer to specifically plead that exemption; and a motion to exclude Huddleston's expert, Collin Miller, who analyzed Huddleston's email activity to deduce his work schedule. For his part, Huddleston moves to strike Chucks president Mary Brandt's declaration, which Chucks uses to oppose summary judgment.

Deciding if the record supports summary judgment requires determining the record's contents. The Court will grant Chucks's motion for leave to amend since Chucks shows good

cause under Rule 16 and nothing justifies denying leave under Rule 15. The Court will further grant Chucks's motion to exclude Miller's irrelevant and misleading email analysis. But the Court will deny Huddleston's motion to strike, since his objections to Brandt's declaration are meritless.

Given that record, the Court will grant-in-part and deny-in-part Huddleston's summary judgment motion. Importantly, his motion answers questions about Chucks's CEO's joint and several liability; Chucks's liability for some unpaid overtime; and Chucks's liability for liquidated damages. But the parties need trial to determine Huddleston's status under the FLSA, Chucks's total liability, the applicable statute of limitations, and the total damage award.

## I.  The Court will grant Chucks's motion for leave to amend because Chucks shows good cause under Rule 16 and because nothing justifies denying leave under Rule 15.

Chucks seeks leave to amend its answer to include a citation to the FLSA's exemption for administrative, executive, or professional employees, 29 U.S.C. § 213(a)(1). Though Chucks generally maintained the FLSA exempted Huddleston throughout this litigation, it specifically invoked the § 213(a)(1) exemption for the first time in discovery responses. By then, Huddleston argues, Chucks waived its application, entitling Huddleston to summary judgment on his nonexempt status. Chucks disagrees, arguing in its summary judgment opposition that Huddleston had fair notice of Chucks's exemption theory.

But with this motion, Chucks hedges its bet. In addition to opposing Huddleston's waiver argument on the merits, Chucks seeks to nip its bud by adding a formal citation to § 213(a)(1) to its answer. Yet Chucks filed its motion five weeks after the amendment deadline. Regardless, the Court will grant the motion since Chucks shows good cause under Rule 16 and since nothing justifies denying leave under Rule 15.

Where a party seeks leave to amend "after a scheduling order's deadline to amend has expired," Rule 16(b)(4) requires the movant show good cause. *Fahim v. Marriot Hotel Servs., Inc.*, 551 F.3d 344, 348 (5th Cir. 2008). Once they do, the "more liberal [amendment] standard of Rule 15(a) will apply." *Id.*

Good cause under Rule 16(b)(4) turns on four factors: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *Sw. Bell Tel. Co. v. City of El Paso*, 346 F.3d 541, 546 (5th Cir. 2003) (internal quotation marks omitted) (quoting *S&W Enters., LLC v. Southtrust Bank of Ala., NA*, 315 F.3d 533, 535 (5th Cir. 2003)).

Assuming a late movant shows good cause, Rule 15(a)(2) requires the Court "freely give leave" to amend "when justice so requires." Circuit precedent further directs the Court to deny leave only if amendment would cause undue delay or prejudice, if movants seek leave to amend in bad faith, if movants repeatedly failed to cure prior deficiencies, or if amendment would be futile. *See United States ex rel. Willard v. Humana Health Plan of Texas Inc.*, 336 F.3d 375, 386 (5th Cir. 2003).

Here, Chucks argues good cause exists because its failure to formally plead the exemption was an oversight; because the amendment could be critical to avoiding an adverse judgment; and because no prejudice would result, since Huddleston already explored Chucks's exemption theory in discovery and briefed it in his summary judgment motion. For good measure, Chucks cites *Vanzzini v. Action Meat Distributors, Inc.*, 995 F. Supp. 2d 703, 713 (S.D. Tex. 2014), where Judge Ellison allowed an employer to add an FLSA exemption to its answer five weeks after the amendment deadline "because preventing Defendants from asserting this

3

defense may have led to recovery by employees who are actually exempt from recovery under the FLSA."

Huddleston opposes the motion by claiming that Chucks lacked diligence and that allowing amendment would require additional discovery and summary judgment briefing. And he distinguishes *Vanzzini* since that employer—unlike Chucks here—sought leave to amend before filing for summary judgment. Instead he cites language from two unreported Southern District of Texas cases suggesting "[t]o successfully plead the affirmative defense of exemption from FLSA provisions that govern minimum wage and overtime requirements, the defendant must identify the exemption of the FLSA *by name*." Pl.'s Resp. 4 (internal quotation marks omitted) (quoting *Franks v. Tyhan, Inc.*, No. 15-191, 2016 WL 1531752, at *2 (S.D. Tex. Apr. 15, 2016)) (citing *Vargas v. HWC Gen. Maint.*, LLC, No. 11-875, 2012 WL 948892 (S.D. Tex. Mar. 20, 2012)), ECF No. 37.

But Chucks adequately shows good cause under the Fifth Circuit's test. Nothing suggests it intentionally put-off identifying a specific exemption. Chucks's general exemption theory was obvious in both its answer (at ¶¶ 4, 17, ECF No. 4), and its joint Rule 26 report (at 1, ECF No. 11) ("Defendants allege that Mr. Huddleston is exempt from the provisions of the Fair Labor Standards Act."), and it specifically identified the § 213(a)(1) exemption in response to Huddleston's interrogatories (at 6, ECF No. 32-3). Moreover, amendment is critically important since Chucks's case hinges on the exemption's applicability. Finally, amendment would not prejudice Huddleston. Not only has Huddleston known about Chucks's general exemption theory since the beginning, he explored the issue during discovery, even acknowledging during a deposition that "I understand . . . you considered [Huddleston] a salaried-exempt employee." 7/30/18 Tr. 37:11-15, ECF No. 32-7. Nor would amendment subject Huddleston to additional

4

costs or delays: he already spends eight pages in his summary judgment motion arguing § 213(a)(1)'s applicability as if Chucks specifically pled it.

Indeed, though Huddleston makes much of Chucks waiting to seek leave until after filing for summary judgment, perhaps Chucks's motion came so late because Huddleston waited so long to object. When Chucks asked Huddleston via interrogatory to identify support for his nonexempt status, Huddleston responded without objection. 5, ECF No. 32-6. Huddleston could have refused to answer the question as outside the pleadings' scope, but instead he waited fourteen more weeks to foist his objection at the summary judgment stage.

Huddleston's cited authority is similarly unavailing. Neither *Franks* nor *Vargas* requires employers to identify a specific exemption. Instead, they hold an employer need only aver a belief the FLSA exempted an employee. The *Franks* court held a generic citation to 29 U.S.C. §§ 207 and 213—provisions with dozens of exemptions covering everyone from wreathmakers to car dealership service advisors—sufficiently pled an exemption theory. *See* 2016 WL 1531752, at *2-3. And the *Vargas* court only deemed that defendant-employer's pleading insufficient because it lacked a factual basis for any exemption and failed to specify whether the exemption came from the FLSA at all. *See* 2012 WL 948892, at *3 (striking an affirmative defense alleging "[s]ome or all of Plaintiff's claims . . . are barred . . . by statutory exemptions . . . under the FLSA and any applicable state law" (omissions in original)). Chucks's answer suffers from neither deficiency. What's more, the cases cited in *Franks* and *Vargas* support Chucks, not Huddleston. *See, e.g., Florida v. DLT 3 Girls, Inc.*, No. 11-3624, 2012 WL 1565533, at *3 (S.D. Tex. May 2, 2012) (citing *Morrison v. Exec. Aircraft Refinishing, Inc.*, 434 F. Supp. 2d 1314, 1318 (S.D. Fla. 2005) ("Where a defendant pleads generally that a plaintiff is not covered under the FLSA, but fails to identify the specific FLSA exemptions that are applicable, the defendant

5

should be given leave to amend the defense."); *Hanzlik v. Birach*, No. 09-221, 2009 WL 2147845, at *4 (E.D. Va. July 14, 2009) ("Forcing a defendant to cite each and every applicable statute and regulation that may support an FLSA exemption at the answer stage would be contrary to the spirit of Rule 8.")) (holding an allegation that "Plaintiff was an exempt administrative and/or executive employee under Section 13(a)(1) of the FLSA" gave the plaintiff-employee sufficient notice).

And given this good cause, the Court will grant leave under Rule 15(a)(2). Simply put, nothing justifies denying amendment. As explained, it causes virtually no delay or prejudice, nor does it appear to be in bad faith. And since Huddleston already argues a missing citation in Chucks's answer entitles him to summary judgment, amending the answer to cite § 213(a)(1) is not futile. The Court will thus grant Chucks's motion for leave to amend.

## II. The Court will grant Chucks's motion to exclude Miller's irrelevant and misleading email analysis.

To prove his total weekly hours, Huddleston testified he worked in the office from about 6:30 AM to 6 PM during the week and from roughly 7:30 AM to 12 PM every other weekend. *See* Huddleston Decl. ¶ 9, ECF No. 27-3. And to buttress his testimony, Huddleston hired expert Colin Miller to analyze Huddleston's email activity to reconstruct when Huddleston started and stopped working. If permitted, Miller would offer graphs summarizing Huddleston's emails' quantity and timing. But Chucks seeks to exclude Miller, arguing his graphs are irrelevant, unreliable, and unhelpful to the factfinder. The Court agrees, and will grant Chucks's motion to exclude.

6

## A. Legal Standard

Federal Rule of Evidence 402 prohibits irrelevant evidence. And under Rule 403, evidence is relevant if "it has any tendency to make a [material] fact more or less probable."

Rule 702 permits a qualified expert's testimony if it helps the factfinder understand the evidence or determine a fact in issue, if it relies on sufficient facts or data, and if it results from reliable principles and methods applied to the case's facts. An expert's principles and methods are reliable if they are valid and properly applied. *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 592-93 (1993).

## B. Because Miller's analysis is unreliable and unhelpful to the factfinder, the Court excludes it from the record.

Armed with Huddleston's 250,000 work emails, Miller used software to graphically represent Huddleston's schedule based on when he sent emails. Absent more exact evidence of Huddleston's workday, Miller's analysis elegantly—if imperfectly—proxies his schedule. Like many Americans, Huddleston's work required him to frequently communicate through email. And even though Huddleston's position included many other tasks, and even though Huddleston (again, like many Americans) occasionally sent personal emails from his work account, neither fact undoes the evidence's strong support for Huddleston's testimony.

And on one hand, Miller's graphs bear several indicia of admissibility. They appear relevant since they make it more likely Huddleston worked the hours he said he did. Moreover, they help the factfinder digest the massive quantity of emails. With adequate time and manpower, the factfinder could take all the emails Chucks produced, cull those Huddleston actually sent, and arrange them to determine the general trend of daily start and stop times. Instead, Huddleston helpfully hired Miller to lift this weight.

7

Yet Miller's graphs suffer from two fatal reliability flaws. First, his dataset stretches back to January 1, 2012. But in any event, the Portal-to-Portal Act bars Huddleston from recovering unpaid overtime from before December 4, 2014. Thus Miller's roughly five-year analysis (from January 1, 2012 to Huddleston's resignation on January 7, 2017) relies on—at least—nearly three years of irrelevant data. Suppose Huddleston's 2012–2014 schedule differed from his 2015–2016 schedule (which is really all that matters here). Miller's charts would mislead the factfinder about Huddleston's schedule during the relevant period.

Second, his Y-axes' exponential scaling—jumping from 10, 100, 1000, and 10,000 in equal increments—obfuscates the significance of the relative bar heights. Take the columns representing weekday emails sent from 7:00–7:30 AM and from 7:30–8:00 AM. At first glance, the two intervals' bar heights seem roughly the same order of magnitude. But comparing the bar heights to the Y-axis reveals an approximately 50% increase from 7:00–7:30 AM (around 900 emails) to 7:30–8:00 AM (roughly 1350 emails). So Miller's summary doubly misleads.

Since Miller's graphs are unreliable and unhelpful in their current form, the Court will grant Chucks's motion to exclude.

## III. The Court will deny Huddleston's motion to strike Brandt's declaration since his objections lack merit.

With this motion, Huddleston tries to strike one of Chucks's best pieces of evidence: its president's description of Huddleston's administrative duties, which casts doubt on his claimed nonexempt status. But since Huddleston's objections lack merit, the Court will deny his motion.

Seeking to kill Brandt's declaration by a thousand cuts, Huddleston first objects to its second paragraph under the best evidence rule and the personal knowledge requirement. Next, Huddleston claims its fourth paragraph contains impermissible legal conclusions. Huddleston

8

further argues its fifth paragraph contains hearsay, violates the personal knowledge requirement, and offers an improper and inconsistent legal conclusion. Huddleston raises similar objections to its sixth paragraph, along with the best evidence rule. He claims that its seventh paragraph also violates the best evidence rule and that it includes improper conclusions. He deems its eighth paragraph "textbook hearsay." Objs. Summ. J. Evid. 4. And he argues its ninth paragraph violates the hearsay rule, the personal knowledge requirement, the best evidence rule, and the authentication requirement.

But Huddleston misunderstands the evidentiary standard for summary judgment. The issue is not whether the declaration would be admissible, but only whether its substance is "*capable* of being 'presented in a form that would be admissible'" at trial. *LSR Consulting, LLC v. Wells Fargo Bank, N.A.*, 835 F.3d 530, 534 (5th Cir. 2016) (quoting Fed. R. Civ. P. 56(c)(2)).

For that reason, Huddleston's hearsay, best evidence, and authentication objections fail. To the extent Brandt references written policies in paragraphs two and seven, Chucks could admit them as business records. *See* Fed. R. Evid. 803(6). Chucks could admit the "hearsay" in paragraphs five, six, and nine as opposing-party statements. *See* Fed. R. Evid. 801(d)(2). And paragraph eight's contested statement asserts the declarant's then-existing mental state, an exception to the general hearsay bar. *See* Fed. R. Evid. 803(3). Finally, since Brandt is also Chucks's records custodian, *see* Brandt Decl. ¶ 10, ECF No. 35-1, paragraph nine's content easily clears any authentication hurdle. *See* Fed. R. Evid. 901(b)(1).

So too for Huddleston's personal knowledge objections. As Chucks's president, Brandt can testify about Chucks's general operation (paragraph two), its employees' roles and responsibilities (paragraphs five and six), and a review she personally conducted (paragraph nine). *See* Fed. R. Evid. 602.

9

Huddleston's objections to Brandt's opinion testimony fall similarly short. Though witnesses may not opine on "purely legal matters," Rule 701 permits lay witnesses to provide opinion testimony bearing on mixed questions of law and fact. *Askanase v. Fatjo*, 130 F.3d 657, 673 (5th Cir. 1997); *see also* Fed. R. Evid. 704 ("An opinion is not objectionable just because it embraces an ultimate issue."). That's all Brandt does here. "FLSA claims typically involve complex mixed questions of fact and law," *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 743 (1981), and "[t]he decision 'whether an employee is exempt under the [FLSA] is primarily a question of fact.'" *Smith v. City of Jackson*, 954 F.2d 296, 298 (5th Cir. 1992) (quoting *Blakmon v. Brookshire Grocery Co.*, 835 F.2d 1135, 1137 (5th Cir. 1988)). So neither describing Huddleston's job as a "supervisory and management role" (paragraphs four and six) nor explaining what his duties entailed (paragraphs five and seven) offend Rule 701, despite the testimony's bearing on Huddleston's exempt status.

Since his objections lack merit, the Court will deny Huddleston's motion to strike.

## IV. The Court will grant-in-part and deny-in-part Huddleston's summary judgment motion.

Seeking to reduce or eliminate the need for trial, Huddleston moves for summary judgment on eight distinct issues. Deciding each issue independently requires some logical jiu jitsu, assuming answers for some questions to decide others. This is especially true since Huddleston cannot obtain summary judgment on the most important question—whether he was exempted from the FLSA's overtime pay requirement. But the juice is worth this squeeze, since his motion resolves three important questions: First, that Chucks's CEO *would* be jointly and severally liable. Second, that Chucks *would* be liable for some weekly unpaid overtime. And third, that Chucks *would* be liable for liquidated damages. But trial remains necessary to answer

10

other questions: Does the § 213(a)(1) exemption apply to Huddleston? Is Chucks liable for additional unpaid overtime? Can Chucks recover two or three years of unpaid overtime? And what are the total damages?

To bring a successful unpaid overtime claim, a plaintiff-employee must prove four elements:

1. that an employer–employee relationship existed during the claimed period;

2. that the FLSA covered the employee;

3. that the defendant-employer failed to pay overtime; and

4. the unpaid overtime amount.

*Johnson v. Heckmann Water Res. (CVR), Inc.*, 758 F.3d 627, 630 (5th Cir. 2014). Once the employee establishes each element with a preponderance of the evidence, the burden shifts to the employer either to disprove the employee's claimed hours or to prove the FLSA exempted the employee. *Id.*

Under the Portal-to-Portal Act, employees must bring unpaid overtime claims within two years. 29 U.S.C. § 255(a). But if an employee proves the employer willfully violated the FLSA, the limitation period extends to 3 years. *Id.* An employer willfully violates the FLSA if it "knew or showed reckless disregard for . . . whether its conduct was prohibited by the statute." *Singer v. City of Waco*, 324 F.3d 813, 821 (5th Cir. 2003) (omission in original) (internal quotation marks omitted) (quoting *Reich v. Bay, Inc.*, 23 F.3d 110, 117 (5th Cir. 1994)).

Here, Huddleston seeks summary judgment on all or part of each element and on the applicable statute of limitations. For element one, he cites evidence establishing Chucks's CEO

11

Emerson Nelson was a separate "employer" under the FLSA and therefore jointly and severally liable for any violation. For element two, he argues procedurally that Chucks waived any FLSA exemption by failing to specify one in its answer, and claims substantively that he does not fall within the § 213(a)(1) exemption. For element three, he argues Chucks admits liability for at least 9.75 weekly in-office unpaid overtime hours and marshals additional evidence suggesting Chucks's liability extends to ten more in-office and fifteen out-of-office weekly unpaid overtime hours. For element four, Huddleston claims Chucks owes liquidated damages equal to the unpaid overtime amount. And since he seeks to collect unpaid overtime from three years before his complaint, Huddleston moves for summary judgment that Chucks's willfully violated the FLSA.

Deciding these issues requires following the familiar summary judgment standard. "[S]ummary judgment is proper if . . . 'there is no genuine issue as to any material fact . . . [and] the moving party is entitled to judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56 (c)). Once the moving party identifies a valid basis for summary judgment, the opposing party must identify "specific facts showing there is a genuine issue for trial." *Id.* at 323-24 (internal quotation marks omitted) (quoting Rule 56(e)). To succeed, the opposing party must also provide evidence allowing a reasonable factfinder to find in its favor. *Davis v. Fort Bend Cty.*, 765 F.3d 480, 484 (5th Cir. 2014).

Based on that standard, and assuming the FLSA's overtime requirement applies, Huddleston merits summary judgment that Nelson would be jointly and severally liable as an employer, that Chucks would be liable for at least 19.75 weekly unpaid overtime hours, and that Chucks would be liable for liquidated damages. Yet Huddleston cannot obtain summary judgment on whether Huddleston actually falls within the § 213(a)(1) exemption; whether

12

Chucks would be liable for an additional ten in-office weekly unpaid overtime hours; or whether any FLSA violation would be willful.

### A. Huddleston deserves summary judgment on Nelson's joint and several liability as an FLSA employer.

Chucks does not directly contest Nelson's joint and several liability if the FLSA overtime requirement applies to Huddleston. Nor could it. "The dominant theme in the case law is that those who have operating control over employees within companies may be individually liable for FLSA violations committed by the companies." *Gray v. Powers*, 673 F.3d 352, 357 (5th Cir. 2012). To determine if a company official has operational control, the Fifth Circuit considers four factors:

1. whether the official could hire and fire employees;

2. whether the official supervised and controlled work schedules or employment conditions;

3. whether the official determined the payment rate and method; and

4. whether the official maintained employment records.

*Williams v. Henagan*, 595 F.3d 610, 620 (5th Cir. 2010).

Here, all four elements support deeming Nelson a jointly and severally liable FLSA employer. Though Nelson formally delegated hiring and firing to other executives, he still oversaw "all levels within the compan[y]," E-mail from Emerson Nelson to all Chucks Employees (Nov. 20, 2016, 8:48 PM), ECF No. 27-8; set the work schedule; gave the final word on pay rates and methods; and oversaw record maintenance. *See* Huddleston Decl. ¶ 13. Accordingly, assuming Chucks's liability, Huddleston merits summary judgment that Nelson would be jointly and severally liable.

13

**B. Huddleston cannot obtain summary judgment on his nonexempt status given a factual dispute about his primary responsibility.**

Huddleston advances procedural and substantive grounds for summary judgment that the FLSA did not exempt him from its overtime pay requirement. But Chucks contends it procedurally and substantively justified applying the exemption for executive or administrative workers. *See* 29 U.S.C. § 213(a)(1) (exempting workers "employed in a bona fide executive, administrative, or professional capacity" from the FLSA's overtime pay requirement).

Summary judgment cannot resolve this dispute. Huddleston loses procedurally since Chucks can amend its complaint and since Huddleston was not prejudiced. Nor can he win substantively, since evidence supports both positions.

**1. Huddleston's procedural argument fails because Chucks can amend its complaint and because Huddleston was not prejudiced.**

As discussed regarding Chucks's motion for leave to amend, *see supra* Part I, Huddleston initially claims Chucks waived § 213(a)(1)'s applicability by failing to specifically plead it. In all events, granting Chucks's motion for leave to amend moots this argument. But Huddleston's argument would fail regardless, since Huddleston had adequate notice of Chucks's general exemption theory and since Chucks's failure to specifically cite § 213(a)(1) in its answer did not prejudice him.

An employer's claim that the FLSA exempted an employee is an affirmative defense. *See Corning Glass Works v. Brennan*, 417 U.S. 188, 196-97 (1974). And Federal Rule of Civil Procedure 8(c) requires defendants plead affirmative defenses "with enough specificity or factual particularity to give the plaintiff 'fair notice' of the defense that is being advanced." *Woodfield v. Bowman*, 193 F.3d 354, 362 (5th Cir. 1999). But "[w]here the [affirmative defense] is raised in

14

the trial court in a manner that does not result in unfair surprise . . . technical failure to comply precisely with Rule 8(c) is not fatal." *Rogers v. McDorman*, 521 F.3d 381, 385-86 (5th Cir. 2008) (internal quotation marks omitted) (quoting *Allied Chem. Corp v. Mackay*, 695 F.2d 854, 855-56 (5th Cir. 1983)). "More specifically, a defendant does not waive an affirmative defense if it is raised at a 'pragmatically sufficient time, and [the plaintiff] was not prejudiced in its ability to respond.'" *Arismendez v. Nightingale Home Health Care, Inc.*, 493 F.3d 602, 610 (5th Cir. 2007) (alteration in original) (quoting *Lucas v. United States*, 807 F.2d 414, 418 (5th Cir. 1986)).

Here, as Part I notes, Chucks's general exemption theory gave Huddleston enough notice to explore the § 213(a)(1) issue during discovery. Nor did Chucks's failure to specifically cite § 213(a)(1) in its answer prejudice Huddleston: he spends eight pages in his summary judgment motion arguing its applicability as if Chucks had pled it. So Huddleston's procedural argument falls flat.

### 2.  Huddleston's substantive arguments fail because the parties dispute his primary job duty.

Huddleston also argues he does not meet the substantive definition of an executive or administrative employee. Labor Department regulations define executive and administrative employees under § 213(a)(1). 29 C.F.R. § 541.100 defines executive employees as those meeting a salary requirement, primarily tasked with managing (at least) an organizational department or subdivision with (at least) two additional employees, and having input on hiring and firing decisions. Section 541.200 defines administrative employees as those meeting the same salary requirement, primarily tasked with office or non-manual work relating to the business's management or general operations, and expected to exercise independent judgment on significant matters. An employee's primary task is "the principal, main, major or most important duty that

15

the employee performs." § 541.700. Yet if an employee's primary task is neither fully executive nor fully administrative, § 541.708 shoehorns into the exemption employees whose primary task blends executive and administrative duties.

Huddleston offers two reasons he falls outside the department's definitions. First, he claims he does not meet the salary requirement. That argument fails. Second, he contends his primary responsibility was inside sales, not the discretionary managerial tasks the regulations contemplate. But because the parties dispute Huddleston's primary responsibility, that argument fails, too.

### a. Huddleston meets §§ 541.100 and 541.200's salary requirement.

As an initial stab, Huddleston claims he does not meet §§ 541.100 and 541.200's salary requirement because Chucks deducted company losses from his pay.

As § 541.602 explains, "[a]n employee is not paid on a salary basis if deductions from the employee's predetermined compensation are made . . . by the operating requirements of the business." To argue Chucks violated this requirement, Huddleston points to a policy stating, "If you lose money on files you [sic] will be deducted from your pay." ECF No. 27-9 at 1-2.

But Chucks cites undisputed evidence showing any deductions came not from Huddleston's predetermined compensation, but from commissions on top of his base salary. *See* Brandt Decl. ¶ 3; *see also* Nelson Dep. Tr. 69:17-24, ECF No. 27-5. And since deductions from commissions do not violate §§ 541.100 and 541.200's salary requirement, Huddleston's first substantive argument fails.

16

### b. The parties dispute Huddleston's primary responsibility.

On his second pass, Huddleston claims he does not fall within the regulatory definitions because his primary responsibility was inside sales, not the discretionary managerial tasks §§ 541.100 and 541.200 describe.

To be sure, evidence in the record supports Huddleston's position. When Chucks sued Huddleston in state court for breach of contract, it described Huddleston's job as "assist[ing] Plaintiffs' customers by brokering freight transportation services." Pls.' Original Pet. ¶ 7-8, ECF No. 27-1. Chucks also admits it required Huddleston to "communicate[] with customers directly," Def.'s 1st Am. Objs. & Resps. 6, ECF No. 27-2, and to seek approval on every sale. Pls.' Original Pet. ¶ 8; Brandt Dep. Tr. 66:11-25, 71:1-10, ECF No. 27-6. This evidence portrays Huddleston as primarily an inside salesman—a cog in the wheel—not primarily an executive or administrator. And if so, he likely falls outside the § 213(a)(1) exemption. *See* 69 Fed. Reg. 22,122, 22,146 (Apr. 23, 2004) ("The [Labor] Department agrees that employees whose primary duty is inside sales cannot qualify as exempt employees."); *see also Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896, 903-07 (3d Cir. 1991) (holding the FLSA exempts inside sales employees as "production rather than administrative employees" who do not "perform 'work of substantial importance to the management or operation' of an employer's business" (quoting 29 CFR § 541.205(a) (1991))).

But unfortunately for Huddleston, Chucks cites contradictory evidence suggesting §§ 541.100 and 541.200 should apply. This evidence highlights Huddleston's unsupervised and discretionary tasks: He managed fuel advance requests for all Chucks freight carriers. Huddleston Dep. Tr. 94:23–95:22. He unilaterally implemented and distributed broad policies to Chucks's dispatch team. Brandt Decl. ¶ 5; Emails from Travis Huddleston (Aug.–Sept. 2014),

17

ECF No. 36-1; Huddleston Dep. Tr. 74:1–75:13, 85:14–86:20; Email from Travis Huddleston to dispatch@chuckstransport.com (Aug. 11, 2014, 8:59 AM), ECF No. 36-3; Email from Travis Huddleston to dispatch@chuckstransport.com (Aug. 11, 204, 9:24 AM), ECF No. 36-4. He spear-headed mandatory weekly training sessions. Email from Travis Huddleston to Chuck & Mary Brandt (Aug. 21, 2014, 2:46 PM), ECF No. 35-13; *see also* Brandt Decl. ¶ 7. He managed the multiperson night dispatch team, provided their training and educational materials, and served as their point person for problems. Brandt Decl. ¶ 6; Huddleston Dep. Tr. 76:18–82:3; Email from Travis Huddleston to dispatch@chuckstransport.com (Aug. 8, 2014, 9:36 AM), ECF No. 36-5; Email from Travis Huddleston to dispatch@chuckstransport.com (Aug. 11, 2014, 8:39 AM), ECF No. 35-11; Email from Travis Huddleston to dispatch@chuckstransport.com & Delphin Bartek (Aug. 11, 2014, 8:39 AM), ECF No. 36-6. And he developed the night dispatch's policies and maintained its customer contact records. Brandt Decl. ¶ 6; Huddleston Dep. Tr. 76:18–82:3; Email from Travis Huddleston to dispatch@chuckstransport.com (Aug. 8, 2014, 9:36 AM); Email from Travis Huddleston to dispatch@chuckstransport.com (Aug. 11, 2014, 8:39 AM); Email from Travis Huddleston to dispatch@chuckstransport.com & Delphin Bartek (Aug. 11, 2014, 8:39 AM).

Given this dispute over whether Huddleston was primarily a salesperson, an executive, an administrator, or some executive-administrative hybrid, summary judgment fails. The parties need trial to determine Huddleston's "principal, main, major, or most important" duty, and whether that classifies him as an executive employee, an administrative employee, a blend of both, or just an inside salesman.

### C. Assuming he is entitled to overtime pay, Huddleston merits summary judgment on Chucks's liability for 24.75 weekly unpaid overtime hours.

Huddleston also moves for summary judgment on liability, premised on his nonexempt status. And he offers three theories for that liability's extent. At least, he claims Chucks admits liability for 9.75 weekly in-office unpaid overtime hours. But he argues his own testimony as well as a 1500-page spreadsheet documenting Huddleston's activity on Chucks's internal software establish additional liability for another ten weekly in-office unpaid overtime hours. And he argues his own testimony on unpaid out-of-office work should add another fifteen overtime hours to the weekly total.

If the § 213(a)(1) exemption does not apply, Huddleston deserves summary judgment on Chucks's liability for just 24.75 weekly unpaid overtime hours. In short, Chucks does not identify any contradictory evidence allowing a reasonable factfinder to find in its favor as to the 9.75 in-office and 15 out-of-office unpaid overtime hours weekly. But since Chucks does cite evidence contradicting the ten additional in-office hours, summary judgment fails for them.

FLSA liability turns on an employee's total hours worked. This total includes "work performed away from the premises or the job site, or even at home. If the employer knows or has reason to believe that the work is being performed, he must count the time as hours worked." 29 C.F.R. § 7785.12. It also includes "all the time during which an employee is necessarily required to be on the employer's premises," irrespective of any mental or physical exertion. *See* 29 C.F.R. § 785.7 (internal quotation marks omitted) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 690-91 (1946)).

If the employer failed to keep time records, the employee need only provide "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable

19

inference." *Beliz v. W.H. McLeod & Sons Packing Co.*, 765 F.2d 1317, 1330 (5th Cir. 1985)

(quoting *Mt. Clemens*, 328 U.S. at 687). "'[T]he employer cannot be heard to complain that the

damages lack the exactness and precision of measurement' . . . . workers may satisfy their burden

with admittedly inexact or approximate evidence." *Id.* at 1330-31 (quoting *Donovan v.*

*Grantham*, 690 F.2d 453, 458 (5th Cir. 1982)). Numerous FLSA cases hold an employee's own

testimony regarding his hours establishes a "just and reasonable inference." *See, e.g.*, *Beliz*, 765

F.2d at 1330-31; *Donovan v. Hamm's Drive Inn*, 661 F.2d 316, 318 (5th Cir. 1981); *O'Meara-*

*Sterling v. Mitchell*, 299 F.2d 401, 403-04 (5th Cir. 1962). And once the employee provides

sufficient evidence, "[t]he burden then shifts to the employer to 'disprove the employee's

testimony that the Act was violated.'" *Id.* at 1330 (quoting *Skipper v. Superior Diaries, Inc.*, 512

409, 420 (5th Cir. 1975)).

Since Chucks concedes it did not maintain time records, Def. Chucks Transport Inc.'s 1st

Am. Objs. & Resps. 4-5, ECF No. 27-2, the just and reasonable inference standard applies. And

Huddleston can satisfy that burden for even his most expansive liability theory.

First, Chucks concedes potential liability for 9.75 weekly in-office unpaid overtime

hours. Chucks admitted Huddleston's minimum "work schedule was Monday through Friday

7:30 a.m. to 5:00 p.m., and one-half day every other Saturday." Def. Chucks Transport Inc.'s 1st

Am. Objs. & Resps. 7. In other words, Chucks required Huddleston work in the office for 49.75

hours each week. So though Chucks maintains the FLSA does not guarantee Huddleston

overtime, if it loses on that issue, it has conceded liability for 9.75 weekly in-office unpaid

overtime hours.

And this figure is the floor, not a ceiling. Huddleston further testifies he worked an

additional fifteen hours weekly outside the office. Huddleston Decl. ¶ 10. These hours count

20

towards Huddleston's weekly total since Nelson and Brandt both knew Huddleston worked outside the office. Nelson Dep. Tr. 95:8–98:4; Brandt Dep. Tr. 20:17-22.

Chucks does not attempt to disprove Huddleston's testimony regarding his out-of-office hours, as the FLSA would require. Nor does Chucks even try to clear the lower summary judgment hurdle of identifying contradictory evidence allowing a reasonable trier-of-fact to find in its favor. Their opposition brief argues only Huddleston's evidence deserves little weight. But that does not defeat summary judgment. *See Davis*, 765 F.3d at 484 (quoting *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007)) ("A party cannot 'defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.'"); *see also Donovan*, 661 F.2d at 318 (affirming judgment for plaintiff-employees supported solely on their own testimony since "[a]fter the employees testified, [defendant-employer] produced no evidence of the precise hours worked, nor did it 'negative the reasonableness of the inference to be drawn from the employee's evidence'" (quoting *Mt. Clemens*, 328 U.S. at 688)); *O'Meara-Sterling*, 299 F.2d at 404 (affirming judgment for plaintiff-employee since "[t]he employer failed to carry the burden under the *Mt. Clemens* doctrine of producing evidence to show the precise time worked or to negative the inference drawn from the evidence of the employee"). So Huddleston should obtain summary judgment on Chucks's liability for 24.75 weekly unpaid overtime hours—9.75 in-office and 15 out-of-office.

Yet summary judgment fails on Huddleston's claim for another ten in-office unpaid overtime hours. To be sure, Huddleston can establish these hours by just and reasonable inference. Brandt and Nelson concede Huddleston sometimes worked in the office outside his minimum hours. Nelson Dep. Tr. 46:6-14; Brandt Dep. Tr. 17:14–18:13. And Huddleston testified he actually worked in the office from roughly 6:30 A.M. to 6:00 P.M. during the week,

21

and approximately 4.5 hours every other Saturday. Huddleston Decl. ¶ 9. That estimate accords with data from a 1500-page spreadsheet documenting when Huddleston entered data into Chucks's Carrier Status Report software.[1] So Huddleston may be able to win on these additional ten hours at trial.

But Huddleston cannot obtain summary judgment on these hours since Chucks marshals just enough contradictory evidence to evince a factual dispute. For one, Nelson testified Huddleston did not regularly come into the office before 7:30 AM. Nelson Dep. Tr. 49:15-25. And internal records—available for the final fifteen of the twenty-five months for which Huddleston seeks unpaid overtime—demonstrate Huddleston logged into his work computer before 7:00 AM just 7% of the time, and before 6:40 AM only 3% of the time, despite claiming to routinely start work at 6:30 AM. *See* ECF No. 35-7.

All in all—and again assuming Huddleston is nonexempt—Huddleston wins partial summary judgment because just and reasonable inference establishes Chucks's liability for 24.75 weekly unpaid overtime hours, and because Chucks fails to identify evidence allowing a reasonable factfinder to find in its favor as to those hours. But because Chucks disputes Huddleston's claim for ten more hours, trial will determine Chucks's total liability.

---

[1]   To summarize the spreadsheet, Huddleston generates a scatterplot (at p.7, ECF No. 27) depicting his time-stamped software activity. As was true for Miller's proposed analysis of Huddleston's email traffic, *see supra* Part II, the scatterplot artfully captures a rough proxy of Huddleston's daily schedule.

   And critically, it evades the reliability concerns plaguing Miller's analysis. Though the scatterplot also depicts data from outside the statute of limitations, the irrelevant portion is easily segregable (indeed, Chucks helpfully does so at p.17 of its opposition, ECF No. 35). And it is accurately drawn to scale.

   Nor is it "hearsay," as Chucks contends. *See* Def.'s Resp. 16. The underlying 1500-page spreadsheet would be admissible as a business record under Federal Rule of Evidence 803(7). Because Chucks has a copy of the spreadsheet (Chucks produced it), and because the spreadsheet is a "voluminous writing . . . that cannot be conveniently examined in court," Rule 1006 permits Huddleston to admit the scatterplot to prove the spreadsheet's contents. *See also* Huddleston's Mot. Summ. J. 7 n.2 (offering to provide the spreadsheet for the Court's inspection).

**D. Huddleston cannot obtain summary judgment that Chucks willfully violated the FLSA, but can obtain summary judgment that Chucks would have to pay liquidated damages.**

Finally, Huddleston seeks summary judgment that Chucks willfully violated the FLSA and that Chucks would be liable for liquidated damages equal to the unpaid overtime amount.

The two issues seem superficially distinct. Whether an employer willfully violated the FLSA determines the applicable statute of limitations. And whether an employer must pay liquidated damages depends on whether the employer reasonably believed it was complying with the FLSA. *See* §§ 216(b), 260.

But the two inquiries ask the same question from different sides and with different burdens. To determine willfulness, the employee must prove the employer knowingly or recklessly violated the FLSA. But to escape liquidated damages liability, the employer must prove it reasonably believed it complied with the law.

Here, Huddleston cannot conclusively show Chucks knowingly or recklessly violated the FLSA. Yet Chucks cannot sufficiently show it reasonably believed it was complying with the FLSA, either. So Huddleston loses summary judgment on willfulness but wins summary judgment on liquidated damages.

1. **Huddleston cannot obtain summary judgment that Chucks willfully violated the FLSA since the parties dispute whether Chucks's CEO adequately investigated the company's no-overtime policy.**

To obtain summary judgment on willfulness, Huddleston cites evidence suggesting Chucks adopted a blanket no-overtime policy despite knowing about the FLSA's overtime pay requirement, and without investigating if the policy complied. If true, Chucks may have willfully violated the FLSA by consciously disregarding a substantial risk its policy violated the overtime

23

pay requirement. *See* 5 C.F.R. § 551.104 ("Reckless disregard of the requirements of the Act means failure to make adequate inquiry into whether conduct is in compliance with the Act.").

But Chucks correctly identifies a factual dispute. After all, Nelson did not admit he never asked about the no-overtime policy's permissibility. Instead, he gave every defense attorney's favorite deposition answer: "I don't recall." Nelson Dep. Tr. 53:3–61:25. Since this cracks the door to a factual dispute, Huddleston cannot obtain summary judgment that Chucks willfully violated the FLSA.

**2. Huddleston may obtain summary judgment that Chucks would be liable for liquidated damages since Chucks neither pleads nor proves it reasonably believed it complied with the FLSA during the period at issue.**

Huddleston's related claim for summary judgment on liquidated damages is slightly different; it is really a no-evidence summary judgment claim. Because here, Chucks bears the burden, but cites no evidence showing it reasonably believed its no-overtime policy complied with the FLSA's overtime requirement.

"Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. With discovery closed, Huddleston moved for summary judgment against Chucks on whether Chucks reasonably believed it complied with the FLSA—an issue on which Chucks bears the burden at trial. And Chucks failed to make a sufficient contrary showing.

Chucks's brief merely rehashes arguments for why the § 213(a)(1) exemption should apply. But that is of no moment to this issue. Applying an exemption is a legal question turning

on statutory interpretation; determining reasonable belief requires evidence. Often the two inquiries are coextensive. The law absolves employers who correctly anticipate their compliance, and punishes employers who flagrantly violate the overtime requirement. But sometimes the two inquiries diverge. An employer faced with a close question may reasonably believe it complied, yet find itself on the wrong side of the law when an employee challenges its policy in court. The law relaxes the penalty for those mistaken judgments, limiting the employer's liability to backpay. So too may a naïve or consciously blind employer who unreasonably believes its payment policy complies catch a lucky break in court. The law does not charge for these pleasant surprises. But proving one's reasonable belief requires more than legal arguments for why an exemption should apply. And here, Chucks does not provide any evidence supporting its belief that its no-overtime policy complied with the law's overtime requirement. So since Chucks fails to meet its burden, Huddleston wins summary judgment that Chucks did not have a reasonable belief it complied with the FLSA. If the FLSA owes Huddleston overtime, Chucks will have to pay liquidated damages.

Even still, it seems odd to grant summary judgment that Chucks did not have a reasonable belief its policy was FLSA-compliant but to let Chucks prove at trial it did not willfully violate the FLSA. But that is the law. Whether Nelson adequately investigated the legality of Chucks's no-overtime policy is relevant only to the extent the summary judgment standard "mirrors the standard for a directed verdict under" Rule 50. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Under Rule 50(a), judgment is appropriate "[i]f a party has been fully heard on an issue . . . and the court finds a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue."

Ultimately, evidence that Nelson cannot recall if he investigated the legality of Chucks's no-overtime policy is not a sufficient evidentiary basis for a jury to conclude Chucks reasonably believed its no-overtime policy complied with the FLSA. But it may be a sufficient evidentiary basis to find Chucks did not knowingly or recklessly violate the FLSA. Put differently, if Nelson knew about the FLSA and chose not to pay overtime, but can't remember if he investigated whether that was legal, he couldn't reasonably believe he was complying with the law. Under those circumstances, that belief would be unreasonable. But even an unreasonable belief may shield him from willfully flouting the law. *Cf. Cheek v. United States*, 498 U.S. 192, 202 (1991).

\*     \*     \*

In the end, Huddleston's summary judgment does not eliminate the need for trial. Questions persist on Huddleston's nonexempt status, Chucks's liability for additional overtime, the applicable statute of limitations, and the total damage award. But assuming for purposes of this motion that Huddleston is nonexempt, it does establish that Chucks's CEO would be jointly and severally liable; that Chucks would be liable for some unpaid weekly overtime; and that Chucks would be liable for liquidated damages.

## V. Conclusion

To review: The Court will grant Chuck's motion [32] for leave to amend since Chucks shows good cause under Rule 16 and since nothing justifies denying leave under Rule 15. The Court will further grant Chuck's motion [40] to exclude Miller, since his testimony is irrelevant and misleading. But the Court will deny Huddleston's motion [42] to strike since his objections to Brandt's declaration lack merit.

26

Additionally, the Court will grant-in-part and deny-in-part Huddleston's summary judgment motion [27]. Huddleston wins summary judgment that Nelson would be jointly and severally liable as an employer, and that—assuming the FLSA entitled Huddleston to overtime—Chucks would be liable for at least 24.75 weekly hours and for liquidated damages. But the parties need trial to resolve whether Huddleston actually falls within the § 213(a)(1) exemption; whether Chucks is liable for an additional ten hours weekly; and whether any purported FLSA violations were willful.

An accompanying order follows.

Date: January 9 , 2019

Royce C. Lamberth
United States District Judge

27